Appellant. Ms. Davis for the appellants, Mr. Dieterman for the appellee. Ms. Davis, good morning. Good morning. May it please the Court, with the Court's permission I'd like to reserve two minutes for a rebuttal. The primary issues presented in this case focus on the District Court's resentencing of the appellants following a remand by this Court.  In particular, the remand was based on the government's failure to prove that the appellants were managers or supervisors pursuant to Sentencing Guideline 3D1.1b, which resulted in a three-level upward adjustment. Appellants submit that the District Court was obligated on remand to consider only two issues, and that is how the change in the offense level affected the overall sentence, and secondly, whether there is any post-sentencing rehabilitation, and this is pursuant to the Supreme Court's opinion in Pepper. Can I ask you, Ms. Davis, if the judge had said managerial enhancement has been lopped off, I find it has no independent weight, similar to Blackson, would that do it? No, because, I mean, once you take away the managerial roles, that means the person, the appellants were less culpable, and the initial sentence was based on the managerial role. That was taken into consideration. Once that's lopped off, they're in a different position. They're less culpable. How about the fact that he went way below the guidelines to begin with? That, we think, was based primarily on the fact that the paperwork that ran up the loss amount, it was basically blank certificates, and there's no loss to the government. It was just basically funny money, so to speak, and so, therefore, to sentence these gentlemen based on the guidelines would have been totally unreasonable, and I think the judge recognized that at the time of sentencing. So, your position is that the district court had no option other than to reduce the sentence? I think, at the very least, the court should have addressed the issue. The court did not even address it. Why wasn't it moved? Why what? Well, the government abandoned any interest in pursuing that enhancement. Right, exactly, but still, I think the case law in this circuit makes clear that when there is a remand, you have to consider the reason for the remand, and the judge never even addressed it, and again, going back to my other point, I mean, once you took away the managerial role, these appellants were in a different position. That's why I asked you my initial question. Is your position that the district court had no discretion other than to reduce the sentence? Exactly. I think there was no discretion. What's your best case on that? I think probably Blackson, which basically held that when someone, I believe that was, when a count is vacated and the case is sent back, the court has to consider how the change affected the overall sentence, and I think in this situation, because those three levels were vacated, that had to be taken into consideration in the overall sentence, even though there was a huge downward. Well, that's why I asked you if, in Blackson, the district judge, which we upheld, said the vacated count had no independent weight. If Judge Lamberth had said the loss of the managerial enhancement had no independent weight, and you say Blackson is the closest case, why wouldn't that suffice? Well, for one thing, Judge Lamberth never said that. Oh, I know. I'm asking, if he had, would you be satisfied? Why isn't this argument waived? Hunter's counsel said, were you Hunter's counsel? I was Mr. Chu's counsel. Hunter's counsel says, quote, realistically, from a guidelines point of view, nothing changes that much in terms of the ultimate sentence. Well, I think from the, I don't know why Hunter's counsel said that. Well, the government argued it, too. Well, right. I mean, from the guidelines. See, then he went right on. From that point, he went right on, and the judge, they talked about rehabilitation. So what it looks like is that counsel is saying, I agree, this doesn't really affect the sentence. What I really want to talk about here is rehabilitation. I think, no, I think there was significant argument, and I believe it was Mr. Hunter's counsel who argued the mathematical changes, the percentage change that should have been imposed as a result of the change in the guidelines, that it should have been a percentage decrease because of that. And so I don't think that that argument was that there's no change in a sentence. I think the argument was just the opposite, that there was a very strong argument, and that, in fact, the pleadings, especially the pleading by Mr. Hunter, argued that strenuously. Now, they were facing life. Isn't that right? And they got 10 years. Right. They were. But, again, the reason, I think it's very obvious that the reason that they weren't sentenced to anything close to that is because there was no loss. It was just all paper. That didn't mean anything. And I believe the government expert testified that had he seen these, he would have just thrown them away. It was laughable. Well, people paid fees, correct? Excuse me? Yes. People paid fees. Yes. All right, so they were out of money. The IRS had to do a lot of meaningless work as a result of all these complaints, and the district court on remand thought it was significant that there had been additional convictions, which caused him to reevaluate his view of the seriousness of the offense. And I know you object to that, but, I mean, that was the district court's explanation. Well, as some background, the additional people that were convicted since then were, I guess, already on the IRS list. I mean, they were not even, they didn't show any connection to these particular appellants. Moreover, any losses- No, you are arguing the nature of the offense. You say nobody was harmed. Basically, nobody was harmed to the extent that the way the loss calculation was calculated. These other items that you're mentioning, Judge Rogers, such as, you know, the fees that people paid, the amount of time the IRS had to put into it, that did not determine the guidelines. That was not part of it. So let me ask you, your brief says that, in response to the government's argument about what our standard of review is, that the defendants had no opportunity to object. Correct. And what did you mean by that? Well, I think the case is, the Bigley case addressed this, and so did the Lethal Lock case. Both addressed that if there's an opportunity to object and you don't, well then you're subject to the plain error review. And so you say, in your brief, there was no opportunity. Exactly. And why not? Because after the arguments of counsel, Judge Lambert called the appellants up and immediately imposed sentence. After the sentence was imposed, that's when he asked the questions. And so why didn't that provide you, counsel, an opportunity to object? Because sentence had already been imposed. And I point out the 40- So what do you think counsel should have said before? In other words, are you reading all these cases to say that on resentencing, defense counsel says, I make the following three points, and the judge enters into a discussion saying, well, I'm not too convinced about that because of some other factors. And the judge says, I'm imposing this sentence. So when do you think the opportunity to object has to exist? I think that as in the Lock case, the judge went through his reasoning and said, this is the sentence I'm going to impose. Are there any questions or anything you wanted to mention? So here where the district court says anything further, could not counsel have said, Your Honor, you didn't mention the fact that there no longer is an enhancement? No, because sentence had already been imposed. And I think that's the distinguishing factor. So suppose you had made that objection and the district court said, no, I took that into account given that the government was not pressing that point anymore. I think it would have been a moot issue because sentence had been imposed. So you see those cases as requiring the district court to give a preview of his sentence, say here's what I'm thinking of imposing? Or at least having a discussion concerning it. There was no discussion. Well, he was talking with defense counsel. But not about this particular issue, not about the. So the judge has to say, I've heard counsel. Here's what I think I'm going to do. Any comments? Which is what happened in the lot case. But that's what you think is required? I think that is required in order. Yes, I do. Otherwise, one sentence is imposed. Once the judge imposes a sentence, it's there, it's in the record. I understand, but I just wonder why you view the post-sentence opportunity as insufficient. I mean, I understand the reality that the judge has imposed sentence and he's unlikely to change his mind. But to the extent you're coming to the appellate court and saying the judge failed adequately to explain his sentence and he didn't mention, you know, that there was no enhancement, the judge at that point could have said, given his response. But then the language in Locke, opportunity to object, plus the rules talking about opportunity to object, would be meaningless. Well, that's what I'm trying to understand about what we mean by plain error. And I gather from your brief, when you say you had no opportunity to object, what you mean is, well, the district court may have asked us anything further, but we never had a chance to have a preliminary understanding of what the judge was going to do on resentencing. Exactly. I believe all defense counsel were surprised that the same sentence was automatically imposed without any consideration of the arguments, such as the change. Now, when the judge started talking about, gee, I think maybe I underestimated the seriousness of the offense, couldn't defense counsel have said, Your Honor, that's an inappropriate consideration? That was part of the sentencing. The judge had already called up the defendants and was imposing sentences at that point in time. Now, you're an experienced trial attorney. Is that correct? No, I'm not. You're not a trial attorney. No, I'm not. All right. Sorry. I'll ask the government. Okay. And if there's no further questions? Well, I've got a question along the lines of Judge Rogers. What happened in Locke, and this was the exact language, after explaining his reasoning, and one of your objections is he didn't adequately explain his reason, he asked the parties if they, quote, know of any reason other than reasons already stated and argued why the sentence should not be imposed as I have just indicated. Nothing else, Your Honor. Okay. Part of your argument is he never sufficiently explained his reasons, and you say, I'm exaggerating, but out of the blue he imposed the sentence and we had no opportunity to object. I mean, at that point, you have to say, at least for the record, at least for purposes of appeal, may I put on the record that you have not sufficiently explained it, you have not said that you've considered rehabilitation, you have incorrectly considered the seriousness of the crime or revisited the original sentence. I mean, Locke doesn't say if those facts aren't in the case, that is, if the judge hasn't explained his reasoning, that Locke applies. I mean, Locke applies because he explained his reasoning. He said, now, before I give the sentence, which I've just told you I'm going to give, is there anything else? Because, again, it goes back to the question of, well, what does opportunity to object mean? If you can make objections following the imposition of sentence and that counts, then opportunity to object means nothing. Well, that's the standard of review because if you at least object, then Judge Lamberth might have said, all right, I'll be a little more specific, or he would have said, or he could have said, fine, your objection is noted, the sentence stands, and then you're up before us. Well, right, but I think the problem here is that Judge Lamberth, number one, never addressed the issue on remand. He never addressed it. And so I think it was clear that Judge Lamberth from the get-go was inclined to impose the same sentence. Whether there is an objection or not, but in this point, since, again, I keep going back to the same thing, since sentence had already been imposed, then to object afterwards in order just to change a standard of review seems not. No, it's not just that. It's to give him an opportunity, too, if he thinks, okay, I need to be more specific. He would have been maybe more specific in giving his reasons for imposing the sentence he did. However, the reasons that he gave, even if he expanded upon them, the reasons he gave were beyond the remand and were inappropriate. They were not proper reasons to begin with. And so I think we go back to the main argument that the purpose of the remand was to consider the enhancement and how it affected the sentence. And that was never addressed. And although it was addressed as far as post-sentencing rehabilitation, that was tied into the seriousness of the offense. And seriousness of the offense was not something that the judge would properly consider. Okay. We'll give you a couple minutes to reply. Thank you. Mr. Dieterman. Good morning. May it please the Court, Mark Dieterman for the United States. Yes, I believe that this case, as far as the objection goes, is quite like Locke. You have to make an objection after. In order to preserve your objection, you have to make that objection after the district court pronounces its sentence. That's the way it works during trial courts. Once a judge makes a ruling, you make an objection in order to preserve your objection. And that did not happen here. And, therefore, their claims of procedural error should be viewed as plain error. Plus, in this court ---- Well, let me ask you this. A couple of circuits take the position that if defense counsel has already argued to the sentencing judge, A, B, and C, and the judge says, I've heard your arguments, I understand them, I've asked some questions, you've given me answers, I'm sentencing you to 10 years, that the idea that there has to be an exception is not only contrary to Rule 51, but really makes no practical sense. But in this case ---- In other words, the district court had every opportunity to consider the objections. The district court is presumed to know what the law is. So, when counsel comes up on appeal and says, related to A, B, and C, the district court failed adequately to explain, it's not quite the same, is it, as bringing up a totally new claim, as was the case, for example, in Ray Seal's case. I think their arguments here, though, were things that were not brought up at sentencing. First, they argue that the three-level wasn't removed, and they never brought that up to the judge. They never said, you're failing to remove the three-level. Second, they're arguing that the statement that the judge made, that I'm not sure I sufficiently valued the seriousness of the crime, they're arguing that that was error. But they never argued during the sentencing that the judge had to ---- Well, they couldn't, he didn't say it. He couldn't, he didn't say it until the end. That's true, but ---- How could they argue it until he said it? Yes, but I'm addressing the point on whether they brought this up beforehand, and that bringing it up beforehand ---- Well, they couldn't possibly have challenged, they couldn't possibly have challenged his statement about the seriousness of it because he hadn't made it. But they could have made an argument that under the remand he was not allowed to sentence them to the same sentence that the judge had to sentence them lower. Does the government's case here depend on us reviewing for point of error? I suppose we don't. No, I don't think so because ---- How would you make that argument? Just the point that the district court did not do de novo resentencing, that it was allowed to ---- it was not required to further reduce their sentence based on this remand, that even the panel's opinion stated that the error, the three-level reduction, that the three-level adjustment could have been harmless. The panel's opinion said that in the last paragraph, and that the judge found that it didn't make a difference, that he had already gave them such a large downward variance. And what about his sentence that, as I look back on the case four years later, I'm not sure it valued sufficiently the serious nature of the offense he committed? I think the statement that I'm not sure isn't de novo resentencing. He's not saying I did not value it sufficiently, and therefore I'm valuing the seriousness more right now. He's just making a general statement of why he doesn't think they deserve a lower sentence. Well, he also goes on in the next sentence and says the consequence to the tax system and to all the people that relied on the information that you all are providing, and that's in response to the government's new fax argument about the 13 people who were convicted after the sentencing. Yes, that's correct. And it does appear that that was in response to the 13 additional clients that were convicted of tax crimes. But both Blackson and Pepper say that a district court, even on a limited remand, can take into consideration post-sentencing new facts and new developments. And that's what the government argued, and that's at least could be read that way, that that's what the judge was responding to when he said, you know, looking at the seriousness of this, I didn't know about all these convictions coming down the road after this. Yes, I think that's true, although I think overall the reason for the 10-year sentence was that Eddie Ray Kahn, who was found to be the leader and organizer of the scheme, was sentenced to 20 years and that he viewed these defendants as about half as culpable as Eddie Ray Kahn, who this court upheld the leader-organizer adjustment for Eddie Ray Kahn, and he received 20 years. Was he facing life, too? What? Was he facing life, too? I thought he wasn't. No, he wasn't facing life. How did that happen, that he was the ringleader? Just a slight difference in the guidelines calculations. I don't remember why right now. I think it was a conviction difference. I think there is one conviction difference. I thought these defendants had no priorities. I'm sorry? Well, I want to go back and just understand what the government's interpretation of Blackson is on its third factor, where it talks about new facts. In other words, at the original sentencing, the district court judge here said, this is a very serious offense, and it knew that there were 4,000 people who had paid these fees. This was a big organization. It had been going on for years. So then at re-sensing, he says, oh, now I understand some more people have been convicted. What I'm wondering is, is that the nature of what Blackson had in mind, and by analogy would be the drug conspiracy, where it's a serious offense. The judge knows it. He imposes sentence. It's sent back for re-sentencing. And the judge says, well, gee, now I realize all these other people have been convicted. Is that what new facts was getting at? In other words, whether there are going to be additional convictions, a matter of prosecutorial discretion, I thought the new facts had more to do with the actual defendant and how it affected the defendant or something like that, not the fact that the crime, because the prosecutor decided to prosecute more people and the jury convicted, was in the nature of new facts. Well, I think this is in the nature of how much the harm was and that more individuals were affected by their scheme. The judge acknowledged that in the beginning is what I'm getting at. Yes, and again, he's just saying, I'm not sure. Maybe this is a little bit worse than I thought. But I think there is a harm difference. I think if something changed in the amount of harm between the original sentencing and the re-sentencing, the judge can take that. Four thousand people are out these fees. That's true. The judge knew that. The defendants had made a lot of money off of these fees. The IRS was bombarded with a lot of letters and wasting its time. The judge knew all that. Yes. Yeah, but what the judge didn't know and what the government argued at this re-sentencing was that these 13 convictions, eight of which necessitated jury trials, as the government put it, were the legacy of the seeds that the defendants planted, which, I mean, Judge Lamberth knew these people had to pay all the fees, but they also were not filing taxes and submitting these bills of exchange. It was more individuals that were induced to commit crimes, which is a harm to society, and I think that's what the judge was considering. So as a practical matter, while this court tried to confine a re-sentencing in Blackson, in reality there's very little confining. I think it's still fairly confined. I don't think we could have gone back and re-argued the same points. We only brought up a small change in the facts. And it was in response to their post-sentencing rehabilitation argument that, well, we've been good people, but we were countering that by saying, well, your scheme is still affecting others. So suppose the judge says, gee, I didn't really understand the seriousness of this offense. 20 years. Yes, I think that would be difficult. I think that would violate Blackson. Difficult? Why? That's what I'm trying to understand. Because I think that's a de novo re-sentencing. That's re-looking at the whole picture and not just looking at one small set of new facts. So your view is that even if the judge had new facts, he could not increase the sentence above 10 years? No, it's possible. If we had shown significant new facts, he could have increased the sentence. But I don't think that we showed facts that would justify increasing. No, but I just want to understand Blackson, all right? And then the other point is rehabilitation. That becomes meaningless under the judge's analysis. He says, that's what I expected. He just didn't find that their rehabilitation was exceptional or unusual. It was just fairly a usual amount of rehabilitation. And he had already taken into consideration their family situation and the fact that they said they were sorry for it. So I think he felt he had fully taken into consideration that amount of rehabilitation. I see I'm out of time, unless the Court has more questions for you. All right, thank you. Thank you. Ms. Davis, why don't you take a minute? Just a couple of additional points I'd like to make. As the government basically agreed during this argument, is that the 13 people that were mentioned during the resentencing was not a substantial change in facts. The judge was already aware of thousands of people that were affected by this scheme. And therefore, to add 13 more really isn't a significant fact on which to, assuming the Court, which we're not saying that the judge should even consider it, but it's not substantial enough to keep the sentence as it was without considering how the change in the offense level should affect the sentence. Now, these thousands of people he was aware of at the original sentencing, were they convicted of anything at that time? I don't know, Your Honor. I don't know. I thought that was the big difference, is they were victims at that point. Now they're... Well, the other point is that these 13 people, there was nothing to show these appellants' connection to any of those 13 people. And I think that in order for this to be considered a new fact, it has to be something that links the defendants to these facts. And I don't think anything was presented at the resentencing. Another employee of this American Litigator's outfit? I mean, who else did have any relationship with these people except whatever this outfit was called? I believe there were other. Again, I was in trial counsel. I believe that there were other people involved in this scheme, and, again, there were no facts linking the 13 to these particular defendants. Well, you had Kahn already convicted, the ringleader. Right. And then the whole purpose for the remand was that the underlings below these three men were not culpable. So who else was there in the record a part of this American Rights Litigator? Your Honor, again, I was in trial counsel. I believe that there may have been other people involved. In regard to the post-sentencing rehabilitation and the government's argument that it had already been taken into effect, we submit that the judge can't sentence prospectively for post-sentencing rehabilitation because, number one, there's nothing in guidelines, nor in 3553, that allows this to happen. And if the judge is allowed to say, well, I expect you to be good in prison, then you were. But what if the judge says, you know, I expect you to be bad in prison, so therefore I'm going to increase your sentence? I mean, the judge has to focus on the facts at the time of sentencing. What he said was he expected them to behave in prison. He took that into account when he sentenced them, and that's what they've done. He accepted their argument about rehab. It didn't affect his view about the sentence because that's what he expected when he sentenced them. He said, I recognize how much you all strive to do the right thing during the period of incarceration, and that's what I expect. But the follow-up is what we think kind of messes up his reasoning, is because he said, then I have to look at the seriousness of the offense. But how can you evaluate the effectiveness of rehabilitation without looking at the seriousness of the offense? Aren't they related to each other? In other words, the more serious the offense, the more rehabilitation you would expect. No, and I think we addressed this in our reply brief, that the seriousness of the offense is something that the judge considers at the time of sentencing. It's something that basically happened before the time of sentencing. Post-sentencing rehabilitation takes place, obviously, after sentencing, and there's no connection between the two. But how can that be? Let's assume you have two different cases, one with a really, really serious crime and one with a minor crime. Doesn't the judge's evaluation of rehab in each of those cases affect it by the fact that one crime was serious and one wasn't? What else does rehabilitation mean? It means rehabilitation. It means the person is rehabilitated from what? You have to ask that question. Exactly, but I don't think the seriousness of the offense links directly to post-sentencing rehabilitation. Ms. Davis, you were appointed to represent Mr. Hunter, and you have done so with your usual expertise. The court thanks you. Okay, thank you very much.
judges: Henderson, Rogers, Tatel